**The PEOPLE of the State of Colorado, Complainant,**

*v.*

**Paul KRAM, Attorney–Respondent.**

**No. 98SA203.**

Supreme Court of Colorado, En Banc.

Oct. 19, 1998.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Daniel J. Schendzielos, Denver, for Attorney–Respondent.

PER CURIAM.

In this lawyer discipline case, a hearing panel of the supreme court grievance committee approved the findings and the recommendation of a hearing board. The board and panel recommended that the respondent, Paul Kram, be suspended for ninety days, but that the execution of the suspension be stayed subject to certain conditions, and that Kram be publicly censured. We generally accept the findings and recommendation, but modify the discipline to be imposed. We publicly censure Kram for his misconduct, and order him to comply with the conditions in the hearing board's report. Should he fail to abide by the conditions we impose, he will be subject to further discipline for violating our order.

I.

Paul Kram was admitted to practice law in Colorado in 1977. Following a hearing, the board made the findings below by clear and convincing evidence.

In early 1996, Sue Barber filed an action against her former employer, an academy, for wrongful termination and breach of contract. She had been hired to teach under a two-year contract, but was terminated after fifteen months. Her complaint sought the balance of her annual salary, about $14,000, plus damages based on various causes of action. The lawyer who initially represented Barber withdrew in April 1996, so she hired Kram who entered his appearance on her behalf. A jury trial was set for January 27, 1997.

The defendant's attorney filed a motion for summary judgment and a memorandum brief on June 17, 1996. Kram notified Barber that the motion had been filed and he obtained her affidavit to submit with his response to the motion for summary judgment. Kram never filed a response, however, and the trial court granted the defendant's motion for summary judgment on August 6, 1996.

After the judgment of dismissal was entered, Kram met with Barber on numerous occasions for the stated purpose of preparing for trial. He did not tell her that he had not filed a response to the motion for summary judgment. In fact, he told her the motion had been resolved in her favor.

Finally, on January 9, 1997, Kram advised Barber that her case had been dismissed, and that he had continued to meet with her, pretending to prepare for trial, although he knew the complaint had been dismissed. Barber was upset and left his office. At a later meeting, he told her he did not carry malpractice insurance, but suggested that she determine how much she felt he owed her because of his negligence and advise him of the amount. He also informed her that she could file a request for investigation with the Office of Disciplinary Counsel.

On January 15, 1997, Kram filed a motion to vacate the summary judgment, admitting that he had not only failed to respond to the motion for summary judgment, but that he had misinformed his client that the matter had been "resolved satisfactorily." The motion also detailed the personal and emotional problems that Kram was experiencing in 1996, including the major surgery his wife underwent, and her slow and lengthy recovery. The district court denied Kram's motion to vacate. Barber retained new counsel, Steven Zimmerman.

On January 29, 1997, Barber wrote to Kram, indicating that in her opinion he owed her at least $113,400. Kram could not meet Barber's demand, so Zimmerman filed a legal malpractice case against him, and appealed the district court's order denying the motion to vacate. Following the hearing in this disciplinary case, the court of appeals reversed the district court's order. *See Barber v. Denver Islamic Educ. Ctr,* No. 97CA0585, slip op. at 4 (Colo.App. Apr. 9, 1998) (not selected for official publication). The court of appeals found that the district court had abused its discretion in denying the motion to vacate and remanded the case for further proceedings. *See id.*

As of the time of the hearing, Zimmerman had billed Barber a total of $10,000. Of this, $7,500 is for his work on the appeal and the balance is for the malpractice case. Barber has paid $1,500 to Zimmerman. Subsequent to the hearing in this case, a settlement agreement was executed between Kram and Barber. The agreement calls for Kram to pay Barber $5,000 within ten days of the date of the agreement, April 8, 1998. Moreover, Kram is to pay Barber "$7,500 within 30 days of a decision which will be rendered by the Colorado Supreme Court in a disciplinary action pending against Mr. Kram." This $7,500 will be paid to Barber "regardless of the nature of the decision of the Supreme Court, and shall be considered total compliance with said decision of any monetary provisions requiring Mr. Kram to pay Ms. Barber or her attorney money."

The hearing board determined that Kram's conduct violated Colo. RPC 1.3 (neglecting a legal matter entrusted to the lawyer); Colo. RPC 1.4(a) (failing to communicate appropriately with a client); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## II.

The hearing panel approved the board's recommendation of a ninety-day suspension, with execution stayed pending Kram's compliance with certain conditions, and the issuance of a public censure. Neither of the parties has excepted to this recommendation. As the hearing board recognized, a suspension is the presumed sanction in a case like this under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*). "Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA *Standards* 4.42. In addition, "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to a client." *Id.* at 4.62.

The hearing board concluded that the only aggravating factors are Kram's substantial

experience in the practice of law, *see id.* at 9.22(i); and his client's vulnerability, *see id.* at 9.22(h). The board found the following mitigating factors: the absence of a prior disciplinary record in twenty-one years of practice, *see id.* at 9.32(a); absence of a dishonest or selfish motive, *see id.* at 9.32(b); full and free disclosure to the disciplinary authorities, *see id.* at 9.32(e); good character and reputation, *see id.* at 9.32(g); and the presence of remorse, *see id.* at 9.32(*l*).

The most significant mitigating factor the board found was the presence of personal and emotional problems. *See id.* at 9.32(c). During the time of the misconduct, Kram was experiencing a number of serious traumatic events, including his wife's health problems. Since she works at his office, her absences compounded his problems.

Following the events in this case, Kram began mental health counseling. His psychologist testified that Kram's misconduct was precipitated by a number of factors rather than a single event. Kram has never tried to deny his neglect, and has fully cooperated in an attempt to prevent similar misconduct in the future.

In *People v. Clark*, 927 P.2d 838, 840–41 (Colo.1996), we accepted a conditional admission and suspended Clark for ninety days for failing to comply with discovery requests which resulted in the entry of a default and judgment against his client in the amount of $816,613. Clark failed to notify the client that discovery sanctions were entered against him until after the judgment was entered, a period of about five months. *See id.* at 839. As in this case, the judgment was eventually set aside by the client's new lawyers, and the case was settled. *See id.* The conditional admission authorized discipline in the range of public censure to ninety-day suspension. *See id.* at 840. We concluded that suspension, rather than public censure, was appropriate given that the conduct was knowing and willful, rather than merely negligent. *See id.* Clark had not been previously disciplined in thirty years of practice. *See id.* The only aggravating factor was Clark's substantial experience in the practice of law. *See id.*

Given the similarity between *Clark* and this case, the hearing board's reluctance to recommend only a public censure plus conditions is understandable. In another case with even more analogous facts, however, we did accept a conditional admission and publicly censured the lawyer. *See People v. Smith,* 769 P.2d 1078, 1080–81 (Colo.1989). Smith was retained to file an action against a moving company for furniture damage. *See id.* at 1079. He never filed a complaint, but misrepresented to his clients over a two-year period that one had been filed and that the case was being continued for various fictitious reasons. *See id.* Nevertheless, we found a suspension unwarranted given the mitigating factors present, including the absence of a prior disciplinary record. Smith was also experiencing personal problems during the period of his misconduct; he made full and free disclosure to the grievance committee of the misconduct; and expressed remorse. *See id.* at 1080.

For similar reasons, we have determined that a public censure, plus conditions, is the proper sanction given the seriousness of the misconduct in light of the mitigating factors. We therefore accept the findings of the board and panel but modify their recommendation slightly.

### III.

Accordingly, Paul Kram is hereby publicly censured. He is also ordered to comply with the following conditions. Kram must:

(1) pay $7,500 to either Sue Barber or Steven Zimmerman within ninety days of the date on this opinion;

(2) comply with the monitoring conditions attached as an appendix to this opinion for a period of one year following the release of this opinion; and (3) pay the costs of this proceeding in the amount of $314.18 within thirty days of the date of the opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 300 South, Denver, Colorado 80202–5435. Should Kram fail to comply with any of the above, he will be subject to further discipline for violation of the supreme court's orders.

*Appendix*

*Standard Conditions*

*Monitoring of Practice by Another Attorney*

An attorney approved by the Office of Disciplinary Counsel shall review the respondent's legal files and method of handling the respondent's caseload for a period of one year following the issuance of a public censure to the respondent. The review procedures shall be as follows:

A. The respondent, Paul Kram, shall demonstrate the existence of a workable reminder, or "tickler" system, and proof of a dual calendar system, or comparable case monitoring system, in effect in the respondent's office within thirty days of the issuance of a public censure to the respondent, and shall by the reports of the monitoring attorney demonstrate that both the reminder system and the dual calendar system, or comparable case-monitoring system, are operating effectively.

B. A caseload review meeting shall take place between the monitoring attorney and the respondent on this schedule:

(1) first six months: meeting once per month;

(2) second six months: meeting every other month.

C. At each meeting the following will take place:

(1) The respondent will prepare a list of current active files, which files will be reviewed by the monitoring attorney, together with the respondent. The monitoring attorney will take steps to verify that the list is complete.

(2) The monitoring attorney will make, and the respondent will document, specific suggestions necessary to assure that the caseload is being properly and professionally handled and that the respondent is progressing in a satisfactory manner.

(3) The monitoring attorney and the respondent will review the list of suggestions from the previous meeting to ensure that all suggestions for improvements have been im-

plemented and that the respondent is in compliance with those suggestions.

(4) The monitoring attorney shall have access to and monitor, to the extent he or she deems necessary, all financial accounts of the respondent's practice, in order to assure that all funds are being handled properly.

D. Within ten days following each meeting, the respondent shall submit to the Office of Disciplinary Counsel a written report of the meeting, which report shall be signed by the monitoring attorney.

E. The monitoring attorney shall immediately disclose to the Office of Disciplinary Counsel any matters which are uncorrected or which represent significant problems requiring corrective attention. Copies of such correspondences shall be sent to the respondent. Such reports may result in new disciplinary charges against the respondent.

F. With the exception of the reporting requirements to the Office of Disciplinary Counsel set forth herein and other reporting required by the monitor's ethical and legal obligations, the monitor shall keep confidential all client information obtained through the monitoring process.

G. The respondent shall inform his clients that he may consult with another attorney on the case, and that if any client information is divulged to that attorney it will be held in confidence by the attorney subject to all attorney ethical requirements including Colo. RPC 1.6.

H. The respondent need not disclose the monitoring arrangement to his clients, but if he chooses to do so, he will inform the client clearly and in writing of the following limits on the monitor's work:

(1) that the monitor's check of specific cases may be random and the client's case may not be selected for review; and

(2) that neither the monitor nor the grievance committee is ensuring the quality of the respondent's work on individual cases, but that the monitoring function is a teaching and consulting function rather than a second opinion on the case or a guarantee of work quality on any case.